No. 1,060.

PLATT v. JOHR.

PRINCIPAL AND AGENT.—*Broker.*—*Procurement of Purchaser.*—*Commission.*—*Recovery of.*—In an action by an agent for commission for procuring a purchaser for property, before there can be a recovery, the sale must be traced to the introduction of the purchaser to the owner by the agent; and if, after such introduction, and as a proximate result thereof, the owner makes the sale himself, either personally or by another agent, it will not exonerate such owner from the payment of commission to the agent who has initiated the negotiations; but if the causal connection between the introducing agent and the procurement of the sale be broken, such agent is not entitled to commission.

From the Marion Superior Court.

*J. E. Florea,* for appellant.

*U. J. Hammond* and *E. St. G. Rogers,* for appellee.

REINHARD, J.—The appellee sued the appellant on a parol contract, and recovered of him the sum of $107 as a commission claimed to have been earned by him in introducing to the appellant a purchaser for the sale of a livery stable and its contents.

The overruling of a demurrer to the complaint is assigned as error; but as the appellant's counsel has not seen proper to discuss the point, it must be treated as waived.

The jury, with the general verdict, returned answers to certain interrogatories. Upon these answers the appellant moved for a judgment, notwithstanding the general verdict. The overruling of this motion is relied upon as constituting reversible error.

The question is also presented whether the evidence is sufficient to sustain the general verdict regardless of the answers of the jury to the interrogatories.

It is averred in the complaint, that some time in No-

vember, 1890, the appellant entered into an agreement with the appellee to the effect that if the appellee would introduce to the appellant a purchaser for his livery stable, horses, wagons, and paraphernalia belonging to such stable and the livery business therewith connected, the appellant would pay the appellee in consideration of such service the sum of $100.

It is further averred that shortly afterwards the appellee did introduce to the appellant one Stewart, to whom he showed the said property, and that in December, 1890, the appellant sold the same to said Stewart, but that said appellant, though requested to do so, has wholly failed to pay the appellee said sum, and that the same remains due and unpaid.

It appears from the interrogatories and answers thereto, that the appellant agreed to pay the appellee the sum of $100 if the appellee would find and introduce to the appellant a purchaser for his livery stable, ready and willing to buy the same; that appellee did find and introduce to the appellant one Jonathan Stewart, but that at the time of such introduction said Stewart was not ready and willing to buy said stable, nor did he offer to buy the same until he was again introduced to the appellant by one Sol Leopold, another agent, and that it was through the efforts of said Leopold, some five or six weeks after appellee met said Stewart, that the latter became the purchaser; that Leopold finally effected the sale and procured said Stewart to purchase the property, for which service appellant had paid Leopold the sum of $100 commission.

The evidence, in effect, shows the same thing as the answers to the interrogatories. While it proves conclusively that the appellant was to pay the appellee the sum of $100 to find and introduce to him a purchaser, and that appellee did present said Stewart to him, it equally

proves that not the appellee, but Leopold, was the efficient agent by whom the sale was effected.

The action is upon a special contract, and the respective rights and liabilities of the parties must be decided by the terms of the agreement. A real estate broker may be employed simply to find a purchaser either generally or upon certain terms of payment, or he may be required by the terms of his employment to go farther and procure from the purchaser a contract that is valid and binding between him and the seller.

In the latter class of cases, before he can recover his commission, he must procure such a binding contract, unless the same is waived by the principal, else he will not be deemed to have completed his undertaking. This class of cases is, however, quite rare, and the general duties of the broker do not require him to go so far. In other words, the first class of contracts mentioned embraces the great majority of the transactions out of which grows the litigation between real estate brokers and their principals.

In the present case it is not contended that the appellee was to secure for the appellant a contract coming within the latter class named. All that he engaged to do was to find and introduce a purchaser who was ready, willing, and able to buy at some price to be agreed upon between the appellant and such purchaser.

The language employed in the contract is not capable of a narrower construction than that given to other and different terms ordinarily used in the making of this class of agreements. Whether a broker is to "introduce" a purchaser, or to "find" or "procure" one, or whether he is to do all these things combined, his duties remain practically the same. The words "find," "procure," "introduce," are generally used synonymously in the making of such contracts, and, whether used con-

junctively or disjunctively, the essential thing they require the broker to do is to secure a customer who is or will become a purchaser.    The logical result of this rule is that the sale must be traced to the introduction of the purchaser to the owner by the agent.    Of course, if, after such introduction and as a proximate result thereof, the owner makes the sale himself, either personally or by another agent, it will not exonerate such owner from the payment of commission to the agent who has initiated the negotiations.    But if the causal connection between the introducing agent and the procurement of the sale be broken, the first agent is not entitled to any commission.

It will not do to say that if the agreement was merely to "introduce" a purchaser the agent has performed his duty when he has presented to the owner some person who contemplates buying, without reference to whether a sale is afterwards made to such person or not.

It would be preposterous to hold that in the present case, under the terms of the contract found by the jury and disclosed by the evidence, the appellant intended to pay the appellee the sum of $100 for the mere luxury of forming the acquaintance of some person with whom the appellant might attempt to negotiate, though unsuccessfully, for the sale of his property.

Courts know judicially that owners of real estate or other property do not usually employ brokers for any such purpose.    At all events, according to the agreement under consideration, the person introduced was to be a purchaser, which means, we think, that he must at some time, and as a result of the introduction, be ready, willing, and able to buy the property upon terms acceptable to the owner.    In other words, the appellee must be the procuring or efficient cause of the sale, unless, indeed, he has been prevented from being such by the conduct of

the owner. This position is abundantly sustained by the authorities, only a few of which need be cited. *Barnett* v. *Gluting*, 3 Ind. App. 415; *McFarland* v. *Lillard*, 2 Ind. App. 160; *Clifford* v. *Meyer*, 6 Ind. App. 633; *Fisher* v. *Bell*, 91 Ind. 243; *Stewart* v. *Murray*, 92 Ind. 543; *Lockwood* v. *Rose*, 125 Ind. 588; Mecham on Agency, 966; 2 Am. and Eng. Encyc. of Law, 582, and authorities cited.

The rule is well stated in the case of *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 38 Am. Rep. 441, and quoted approvingly by our Supreme Court in *Stewart* v. *Murray, supra,* as follows: "We do not mean that the broker must, of necessity, be present and actively participate in the agreement of the buyer and seller when the agreement is actually concluded. He may just as effectually produce and create the agreement, though absent when it is completed and taking no part in the arrangement of its final details.    *   *   *    But in all the cases, *under all and varying forms of expression*, the fundamental and correct doctrine is, that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale and the price and terms upon which it is to be made, and until this is done, his right to commissions does not accrue."

We are of the opinion, therefore, that if Leopold, and not the appellee, was the procuring cause of the sale, as the jury specially found and as the evidence discloses without material contradiction, the appellee can not recover.

Appellee's counsel insist that they are supported in their contention that under the circumstances of this case the plaintiff is entitled to recover by the case of *Northwestern, etc., Life Ins. Co.* v. *Williams,* 98 Ind. 403.

We think otherwise. The case just cited proceeds and is determined upon the theory that Williams initiated

Louisville, Evansville and St. Louis Consolidated R. R. Co. v. Berry.

the negotiations which resulted in the sale of the company's property. The court holds, in effect, that the evidence supports this theory, and it was upon this hypothesis that an affirmance of the judgment of recovery was adjudged. The very opposite is the effect of the special findings of the jury, and the uncontradicted evidence in the case before us.

The case cited is, therefore, in harmony with, rather than in opposition to, the conclusion at which we have arrived.

Judgment reversed, with directions to sustain appellant's motion for judgment, notwithstanding the verdict.

Filed Jan. 25, 1894.